UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

Endicott Interconnect Technologies, Inc., *et al.*,[1]

Debtors.

Chapter 11
Case No. 13-61156

Jointly Administered

# CHAPTER 11 PLAN OF LIQUIDATION OF DEBTOR ENDICOTT INTERCONNECT TECHNOLOGIES, INC.

BOND, SCHOENECK & KING, PLLC
*Attorneys for Debtor*
*Endicott Interconnect Technologies, Inc.*
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Endicott Interconnect Technologies, Inc. (2350) and EI Transportation Company, LLC (4961).

2240308.3

# TABLE OF CONTENTS

**Page**

Article I  Definitions ..................................................................................................................... 1

Article II  Classification of Claims and Interests ...................................................................... 6

    2.1    Class 1: Administrative Expense Claims ................................................................. 6
    2.2    Class 2: Priority Claims ............................................................................................. 6
    2.3    Class 3: General Unsecured Claims .......................................................................... 6
    2.4    Class 4: Existing Equity Interests ............................................................................. 6

Article III  Impairment .................................................................................................................. 6

Article IV  Treatment of Classes .................................................................................................. 6

    4.1    Class 1 – Administrative Expense Claims ............................................................... 6
    4.2    Class 2 – Priority Claims ........................................................................................... 7
    4.3    Class 3 – General Unsecured Claims ....................................................................... 7
    4.4    Class 4 – Existing Equity Interests ........................................................................... 7

Article V  Means for Execution of the Plan ................................................................................ 7

    5.1    Distribution Sources and Methods ............................................................................ 7
    5.2    Persons Authorized to Implement Plan .................................................................... 8
    5.3    Cancellation of Equity Interests ................................................................................ 8
    5.4    Dissolution of Creditors' Committee ........................................................................ 8
    5.5    Dissolution of Corporate Entity ................................................................................ 8

Article VI  Procedure for Resolving Disputed Claims and in Respect of Distributions ................ 8

    6.1    Objection Deadline ..................................................................................................... 8
    6.2    Authority to Oppose Claims and Prosecute Estate Causes of Action .................... 8
    6.3    No Distributions on Disputed Claims Pending Allowance ..................................... 9
    6.4    No Distribution in Excess of Amount of Allowed Claim ....................................... 9
    6.5    Determination by Bankruptcy Court ........................................................................ 9
    6.6    Unclaimed Property/Unclaimed Personal Property ................................................ 9
    6.7    Third Party Agreements; Subordination .................................................................. 9
    6.8    Transmittal of Distributions and Notices ................................................................. 9
    6.9    Disputed Payment .................................................................................................... 10
    6.10    Withholding Taxes and Expenses of Distribution ............................................... 10
    6.11    Method of Cash Distributions ................................................................................ 10
    6.12    Fractional Cents/De Minimis Payment ................................................................. 10
    6.13    Distributions on Non-Business Days ..................................................................... 10

Article VII Executory Contracts ................................................................................................ 10

    7.1    Rejection of Executory Contracts ................................................................................. 10
    7.2    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan........................................................................... 10

Article VIII Discharge and Releases........................................................................................... 11

    8.1    Discharge and Release ................................................................................................ 11
    8.2    Full Satisfaction .......................................................................................................... 11
    8.3    Injunction Through Confirmation Date ..................................................................... 11
    8.4    Exculpation ................................................................................................................. 12
    8.5    Permanent Injunction ................................................................................................. 12
    8.6    Binding Effect............................................................................................................. 12

Article IX  Causes of Action...................................................................................................... 12

Article X Modification of This Plan .......................................................................................... 13

    10.1   Modification................................................................................................................ 13
    10.2   Prior Votes on Modification ...................................................................................... 13

Article XI General Provisions..................................................................................................... 13

    11.1   Notices ........................................................................................................................ 13
    11.2   Confirmation by Non-Acceptance Method............................................................... 14
    11.3   Payment of Statutory Fees ......................................................................................... 14
    11.4   Headings ..................................................................................................................... 14
    11.5   Enforceability.............................................................................................................. 14
    11.6   Exemption from Transfer Taxes ................................................................................ 14
    11.7   Closing of Chapter 11 Case ....................................................................................... 14

Article XII Retention of Jurisdiction .......................................................................................... 15

Endicott Interconnect Technologies, Inc. (the "Debtor"), proposes the following plan of liquidation (this "Plan") pursuant to section 1121(a) of title 11 of the United States Code.

# ARTICLE I

# DEFINITIONS

For purposes of this Plan, the following terms shall have the respective meanings as hereinafter set forth. The capitalized terms used in this Plan shall at all times refer to terms defined in this Article I.

1.1 "Accounts" means all rights of the Debtor for payments for goods sold or leased or for services rendered.

1.2 "Administrative Expense Claim" means any cost or expense of administration of the Proceedings allowed under § 503(b) of the Bankruptcy Code including, without limitation, any actual and necessary expenses of operating the Debtor's business together with all allowances of compensation or reimbursement of expenses to the extent allowed under § 330 of the Bankruptcy Code.

1.3 "Administrative Expense Claimant" means a holder of an Allowed Administrative Expense Claim.

1.4 "Allowed" means, with respect to Claims, (a) any Claim against the Debtor, proof of which is timely filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim that has been or is hereafter listed in the Schedules of liabilities filed by the Debtor, as liquidated in amount and not disputed or contingent or (c) any Claim allowed pursuant to this Plan and, in each such case in (a) and (b) above, to which either (i) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such objection is so interposed and the Claim will have been allowed by a Final Order (but only to the extent so allowed).

1.5 "Asset Purchase Agreement" means the Asset Purchase Agreement dated as of September 19, 2013, as amended by the Amendment to Asset Purchase Agreement dated October 31, 2013, entered into by and between the Debtor and Integrian.

1.6 "Assets" means the assets of the Debtor, including all cash, accounts, chattel paper, machinery and equipment, furniture, personal property, contracts, inventory, supplies, intellectual property, computer equipment, permits and licenses, Causes of Action, shares or membership interests in all corporations, limited liability companies and partnerships owned by the Debtor, books and documents, the Debtor's corporate name and general intangibles.

2240308.3

1.7    "Avoidance Actions" means any and all Causes of Action and rights to recover or avoid transfers or to avoid any lien or interest under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to , sections 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or applicable non-bankruptcy law or state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

1.8    "Bankruptcy Code" means that version of title 11 of the United States Code, §§ 101, *et seq.*, as amended, that was in effect on the Petition Date.

1.9    "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of New York (Utica Division) in which the Chapter 11 Case is pending.

1.10    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case under section 151 of title 28 of the United States Code.

1.11    "Cash" means cash, cash equivalents and readily marketable securities or instruments, including, but not limited to, bank deposits, certified or cashiers checks, timed certificates of deposit issued by any bank, commercial paper and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof.

1.12    "Causes of Action" means claims, third-party claims, counterclaims, cross-claims, setoff, offset, or other defenses, claims and recoveries under any D&O policies or E&O policies, all choate and inchoate actions, rights of action, causes of action, causes in action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, whether fixed, contingent, matured or unmatured, disputed or undisputed, secured or unsecured, and whether asserted or unasserted, known or unknown, direct or indirect, derivate, or otherwise, and the proceeds thereof, of ,or belonging to, the Debtor or its bankruptcy estate against any entity or person, based in law or equity, including, but not limited to, under the Bankruptcy Code or any applicable state law, whether asserted, commenced, or filed in the  Bankruptcy Court, or any other court or tribunal.

1.13    "Chapter 11" means the provisions of chapter 11 of the Bankruptcy Code.

1.14    "Chapter 11 Case" means the bankruptcy case styled *In re Endicott Interconnect Technologies, Inc.* pending in the Bankruptcy Court and assigned case number 13–61156.

1.15    "Claim" means a claim against the Debtor as defined in § 101 of the Bankruptcy Code, *to wit*, (a) the right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; and (b) the right to an equitable remedy for breach of performance if such breach gives rise to a payment whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2240308.3

1.16 "Class" means any group of Claims classified by the Plan pursuant to § 1121(a)(1) of the Bankruptcy Code.

1.17 "Committee" means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee in the Chapter 11 Case.

1.18 "Confirmation Date" means the date of the entry by the Court of an Order confirming this Plan.

1.19 "Confirmation Order" means the Order entered by the Bankruptcy Court confirming the Plan in accordance with Chapter 11.

1.20 "Creditor" means any Entity that holds a Claim against the Debtor.

1.21 "Debtor" means Endicott Interconnect Technologies, Inc., the debtor in possession with regard to the Chapter 11 Case.

1.22 "Disclosure Statement" means the disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code.

1.23 "Disputed Claim" means (a) any claim (other than any Allowed Claim) which is scheduled as disputed, contingent or unliquidated or (b) any claim which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code or by the Order of the Bankruptcy Court, which objection has not been determined in whole or in part by a final Order.

1.24 "Disputed Claim Reserve" means the reserve established for Disputed Claims according to this Plan.

1.25 "Distributions" means the payments to the various classes of Claims as provided in this Plan.

1.26 "Distribution Dates" means such date(s) as the Debtor shall establish, in its discretion, for making Distributions.

1.27 "Debtor Account" means the Debtor in Possession account maintained at M&T Bank, in which the Debtor has deposited, or shall deposit, all of its Cash and the Proceeds.

1.28 "Effective Date" means a Business Day selected by the Debtor on or after the Confirmation Date on which the conditions to the effectiveness of this Plan have been satisfied or waived.

1.29 "Entity" means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof, or other person or entity, regardless of the form of the business organization.

3

2240308.3

1.30 "Estate Note" means the promissory note executed by Integrian to the Debtor's estate in the amount of $850,000.00, payable without interest in 20 consecutive equal quarterly installments, with the first installment due on the last business day of the first full month that is six months after the Effective Date.

1.31 "Final Order" means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceeding for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired.

1.32 "General Unsecured Claim" means any Claim arising prior to the Petition Date as against the Debtor, other than an Administrative Claim, Priority Claim or Secured Claim.

1.33 "Integrian" means Integrian Holdings, LLC collectively with I3 Electronics, Inc., I3 Technologies, Inc., I3 Fabrications, Inc. and I3 Assemblies, Inc.

1.34 "Liquidation" means the determination by the Debtor of the extent and nature of the Debtor's Assets and its liabilities and the orderly liquidation of the Assets and distribution of the Proceeds.

1.35 "Liquidation Expenses" means the expenses incurred by the Debtor with regard to the Liquidation including, without limitation, Administrative Expense Claims and Priority Claims.

1.36 "Objection Deadline" has the meaning ascribed thereto in Section 6.1 of this Plan.

1.37 "Petition Date" means July 10, 2013, the date on which the Chapter 11 Case was commenced.

1.38 "Plan" means this Chapter 11 Plan and any amendments hereto or modification hereof made in accordance with chapter 11 of the Bankruptcy Code.

1.39 "Priority Claim" means the portion of an Allowed Claim entitled to priority under § 507(a)(3) through § 507(a)(8) of the Bankruptcy Code.

1.40 "Proceeds" means net cash received from the sale, disposition or liquidation of any Asset and any interest thereon.

1.41 "Professional Claim" means a claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy

2240308.3

Code relating to services, provided by a professional appointed in the Chapter 11 Case, incurred on and after the Petition Date and prior to and including the Effective Date.

1.42    "Professional Fee Claims" means all amounts awarded to parties or firms under sections 330 of the Bankruptcy Code.

1.43    "Pro Rata Share" means, with respect to a claimant of a particular Class, the proportion that the Allowed Claim or the then unpaid portion thereof of such claimant in such Class bears to the aggregate Allowed Claims (or the aggregate then-unpaid portion thereof) of all claimants in such Class. Included in such calculations shall be the full amount of Disputed Claims in the particular Class which have been asserted and which are otherwise pending and which have not yet been allowed or otherwise disposed of.

1.44    "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under § 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statement have been or may be supplemented or amended through the Confirmation Date.

1.45    "Section 503(b)(9) Claim" means any Administrative Expense Claim arising under § 503(b)(9) of the Bankruptcy Code.

1.46    "Secured Claim" means a Claim (i) secured by collateral, to the extent of the value of such collateral (a) as set forth in the Plan, (b) as agreed by the holder of such Claim and the Debtor, or (c) as determined by a Final Order in accordance with § 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under § 553 of the Bankruptcy Code.

1.47    "U.S. Trustee" means the Office of the United States Trustee for the Northern District of New York.

1.48    The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine and the neuter. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in § 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

Claims are classified for all purposes, including voting (unless otherwise specified), confirmation and distribution pursuant to the Plan, as follows:

2.1    Class 1: Administrative Expense Claims. Class 1 consists of holders of Allowed Administrative Expense Claims. All of the Class 1 Claims remaining to be paid in the Chapter 11 Case consist of (i) the Professional Fee Claim of Bond, Schoeneck & King, PLLC, as counsel to the Debtor, (ii) quarterly fees due the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), (iii) all Allowed Section 503(b)(9) Claims, (iv) all post-Petition Date tax claims of governmental units, and (v) all unpaid accounts payable incurred by the Debtor after the Petition Date in the ordinary course of the Debtor's business.

2.2    Class 2: Priority Claims. Class 2 consists of Allowed Priority Claims.

2.3    Class 3: General Unsecured Claims. Class 3 consists of all holders of General Unsecured Claims.

2.4    Class 4: Existing Equity Interests. Class 4 consists of all holders of existing equity interests in the Debtor.

## ARTICLE III

## IMPAIRMENT

Class 1 is not Impaired under the Plan and therefore is deemed to accept the Plan. Classes 2 and 3 are impaired under the Plan, and may vote to accept or reject the Plan. Class 4 equity interests will be cancelled and extinguished as of the Effective Date.

## ARTICLE IV

## TREATMENT OF CLASSES

4.1    **Class 1 – Administrative Expense Claims.**

(a)    Distribution. Allowed Class 1 Administrative Expense Claims will be paid in full, in cash, on or before the Effective Date or, if incurred after the Effective Date, as they are incurred. Each holder of an Administrative Expense Claim in this Class shall be paid with priority as set forth in § 507(a)(1) of the Bankruptcy Code an amount not to exceed the full amount of its Claim prior to any Distribution to any holder of a Claim in Classes 2 or 3. No payment shall be made to any claimant in this Class until the Claim has been fixed and allowed by final and non-appealable order of the Court.

(b)    Impairment and Voting. Class 1 Claims are not Impaired and shall not be entitled to vote to accept or reject the Plan. Accordingly, the Class 1 Claim holders are deemed to have accepted the Plan.

2240308.3

4.2    **Class 2 – Priority Claims.**

(a)    Distribution. The holders of Allowed Class 2 Priority Claims shall be paid in full, in installments with priority as set forth in § 507(a) of the Bankruptcy Code, as funds are received under the Estate Note, prior to any distribution to any holder of a Claim in Class 3. No payment shall be made to the claimants in this Class unless, however, and until (i) all Class 1 Claims have been paid in full, and (ii) the Priority Claims have been fixed and allowed by a Final Order of the Bankruptcy Court or determined to be undisputed, liquidated and not contingent. The Class 2 Priority Claims shall be paid without interest.

(b)    Impairment and Voting. The Class 2 Priority Claims are Impaired and shall be entitled to vote to accept or reject the Plan.

4.3    **Class 3 – General Unsecured Claims.**

(a)    Distribution. At this time, the Debtor estimates that after paying the Claims in Classes 1 and 2, a portion of the proceeds of the Estate Note will be available to distribute to the holders of Allowed Class 3 General Unsecured Claims. At this time, the Debtor estimates that the holders of Allowed Class 3 Claims will receive a distribution equal to 1%-2% of their Allowed Claims. Payment of the Allowed Class 3 Claims will be funded from the proceeds of the Estate Note and will be paid in annual installments over five (5) years. The Class 3 General Unsecured Claims shall be paid without interest. No payment shall be made to any claimant in this Class unless and until (i) all Class 1 and 2 Claims have been paid in full; and (ii) such General Unsecured Claim has been fixed and allowed by a Final Order of the Bankruptcy Court or determined to be undisputed, liquidated and not contingent.

(b)    Impairment and Voting. Class 3 is Impaired and therefore holders of Class 3 General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.4    **Class 4 – Existing Equity Interests.**

(a)    Distributions. All Class 4 existing equity interests will be extinguished and cancelled on the Effective Date and will receive no distribution in this case.

(b)    Impairment and Voting. The Class 4 holders of existing equity interests have been deemed to reject the Plan, and therefore will not be entitled to vote to accept or reject the Plan.

The issuance of a Confirmation Order by this Court shall discharge the Debtor from all obligations not explicitly treated under the Plan.

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

5.1    Distribution Sources and Methods. The Cash required to fund Distributions to be made to claimants under this Plan will be funded from the liquidation of all Assets of the Debtor and the proceeds of the Estate Note. To the extent that additional assets of

7                                      2240308.3

the Debtor are hereafter recovered and/or liquidated, the proceeds will be placed in the Debtor Account and used to fund Distributions under the Plan.

5.2    Persons Authorized to Implement Plan. Upon confirmation, the Debtor and Bond, Schoeneck & King, PLLC, as counsel to the Debtor, shall be empowered and authorized to (i) act as disbursing agents in connection with all Distributions to be made under the Plan and (ii) perform all acts and to execute all documents and instruments necessary to implement and fully consummate this Plan. The Debtor's Chief Restructuring Officer, David Van Rossum, shall be compensated in the ordinary course of business for his services in implementing the Plan. Bond, Schoeneck & King, PLLC shall be paid in accordance with the Court's orders relating to its appointment and payment.

5.3    Cancellation of Equity Interests. All Existing Equity Interests will be cancelled and terminated on the Effective Date. In the unlikely event, however, that assets remain after payment in full of Creditor claims ("Excess Proceeds"), such Excess Proceeds shall be paid by the Debtor to the Class 4 Existing Equity Interests.

5.4    Dissolution of Creditors' Committee. The Committee appointed in the Chapter 11 Case will continue to exist and function until the Effective Date, and will be dissolved and disbanded on the Effective Date. Counsel for the Committee will waive all fees incurred after November 1, 2013 in connection with its representation of the Committee; however, such counsel will be permitted to seek reimbursement from the Debtor's estate for all reasonable expenses incurred on behalf of the Committee through the Effective Date.

5.5    Dissolution of Corporate Entity. Following the entry of an Order closing the Chapter 11 Case, the Debtor's representatives shall, in their discretion, take any and all steps deemed necessary to properly dissolve the Debtor's corporate entity.

## ARTICLE VI

## PROCEDURE FOR RESOLVING DISPUTED CLAIMS AND IN RESPECT OF DISTRIBUTIONS

6.1    Objection Deadline. As soon as practicable, but in no event beyond sixty (60) days after the Effective Date, unless otherwise authorized by the Bankruptcy Court upon *ex parte* motion by the Debtor (the "Objection Deadline"), the Debtor shall file objections to Claims with the Bankruptcy Court and serve such objections upon the holders of each of the Claims to which objections are made, upon consultation with the Creditors' Committee.

6.2    Authority to Oppose Claims and Prosecute Estate Causes of Action. Subject to (a) consultation with the Committee and (b) all necessary approvals from the Bankruptcy Court, the Debtor shall have the exclusive privilege of objecting to, disputing, defending against, and otherwise opposing, and the making, asserting, filing, litigation, settlement or withdrawal of all objections to, Claims. The Debtor shall have the power to preserve, fail to preserve, settle, compromise or litigate any claim or cause of action (except for any claims or causes of action released or to be released pursuant to or in connection with this Plan) before any applicable or appropriate court, panel, agency or tribunal (including, where

appropriate, the Bankruptcy Court) that the Debtor may have against any Entity based on acts, omissions or events prior to the Effective Date. The Debtor shall continue to retain the services of Bond, Schoeneck & King, PLLC, which shall be paid for services rendered during the post-Confirmation period by the Debtor's estate.

      6.3    No Distributions on Disputed Claims Pending Allowance. Notwithstanding any other provision in this Plan, no payment or Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Claim becomes an Allowed Claim consistent with this Plan.

      6.4    No Distribution in Excess of Amount of Allowed Claim. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim or Allowed Administrative Expense Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim. Except as otherwise expressly provided herein, no Claim or Administrative Expense Claim shall be Allowed to the extent it is for post-petition interest.

      6.5    Determination by Bankruptcy Court. The amount of any Disputed Claim, and the rights of the holder of such Claim, if any, to payment in respect thereof shall be determined by the Bankruptcy Court, unless it shall have sooner become an Allowed Claim.

      6.6    Unclaimed Property/Unclaimed Personal Property. If any Distribution remains unclaimed for a period of sixty (60) days after it has been delivered (or attempted to be delivered) in accordance with this Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder. The holder of the Allowed Claim previously entitled to such unclaimed property shall cease to be entitled thereto, and such property shall, to the extent practicable in the Debtor's sole discretion, be redistributed to the holders of Allowed Claims pursuant to this Plan.

      6.7    Third Party Agreements; Subordination. Except as set forth herein, Distributions to the various Classes of Claims hereunder shall not affect the right of any Entity to levy, garnish, attach or employ any other legal process with respect to such Distributions by reason of any claimed contractual subordination rights, or otherwise. Distributions made by the Debtor shall not be inconsistent with such contractual subordination provisions and may be modified only by a Final Order directing that Distributions be made other than as provided in the Plan and Confirmation Order; provided, however, that the Debtor (or any of its agents, members, representatives, professionals or employees) shall not be liable to any Entity on account of distributions which are ultimately determined to be inconsistent with inter-creditor contractual subordination agreements or rights unless such Distributions were made in bad faith or with malicious intent.

      6.8    Transmittal of Distributions and Notices

      (a)    Any property or notice which an Entity is or becomes entitled to receive pursuant to this Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity at the address indicated on any notice of appearance filed in this Chapter 11 Case by that Entity or its authorized agent prior to the Effective Date. If no notice of appearance has been filed, notice shall be sent to the address indicated on a properly filed proof

of claim or, absent such a proof of claim, the address set forth in the relevant Schedule of assets and liabilities for that Entity. Property distributed in accordance with this section shall be deemed delivered to such Entity regardless of whether such property is actually received by that Entity.

(b) A holder of an Administrative Expense Claim or Claim may designate a different address for notices and/or Distributions by notifying the Debtor in writing of that address. Any change of address of a party entitled to receive Distributions hereunder must be provided to the Debtor by registered mail in order to be effective. Such notification shall be effective upon receipt by the Debtor.

6.9    Disputed Payment. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor may, in lieu of making a Distribution to such Entity, make such Distribution into a Disputed Claims Reserve until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute. The Debtor shall not have any liability if it acts in accordance with this section.

6.10    Withholding Taxes and Expenses of Distribution. No federal, state or local withholding taxes or other amounts required to be withheld under applicable law will be deducted from Distributions made pursuant to this Plan. All Entities holding Claims and receiving Distributions under the Plan are responsible for paying to the appropriate taxing authorities the required amounts as defined in the applicable tax codes.

6.11    Method of Cash Distributions. Any Cash payment to be made by the Debtor pursuant to this Plan will be in U.S. dollars and will be made by check.

6.12    Fractional Cents/De Minimis Payment. When any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of less than $0.50 and rounding up in the case of $0.50 or more); provided, however, that in no event will an amount less than $1.00 be distributed.

6.13    Distributions on Non-Business Days. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

## ARTICLE VII

## EXECUTORY CONTRACTS

7.1    Rejection of Executory Contracts. To the extent that any executory contract or unexpired lease remains which has not been expressly assumed and assigned to a third party, it shall be deemed rejected.

7.2    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan. Unless otherwise ordered by the Court, any creditor whose Claim arises from the rejection of an executory contract or unexpired lease shall have thirty (30) days from (i) the entry of an order authorizing the Debtor to reject the contract or

10

lease, or (ii) if the contract or lease is rejected as part of the Plan, the service upon them of a copy of the Confirmation Order, to file a Proof of Claim with the Bankruptcy Court regarding such rejection. To the extent such Claim becomes an Allowed Claim, any such person shall have the rights of a Class 3 Claimant with respect thereto. If such Proof of Claim is not filed within the time specified herein, it shall be forever barred from assertion against the Debtor or its property.

## ARTICLE VIII

## DISCHARGE AND RELEASE

8.1 <u>Discharge and Release</u>. On the Effective Date, the Debtor, the Committee, the Committee's members, and their respective employees, officers, directors, attorneys and agents, and their respective Assets and properties will be discharged and released from any debt, charge, liability, encumbrance, security interest, lien, assignment, Claim or other Cause of Action of any kind, nature or description (including, but not limited to, any claim of successor liability) that arose before the Effective Date, and any debt of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a Proof of Claim is filed or is deemed filed, whether or not such Claim is Allowed, and whether or not the holder of such Claim has voted on this Plan including, without limitation, liabilities arising under environmental laws in respect of the Debtor, or any of the Debtor's successors or assigns or their respective Assets or properties, which result, in whole or in part, from any condition, event, occurrence or happening prior to the Effective Date, whether known or unknown, discovered or undiscovered, asserted or unasserted, latent or patent, and regardless of whether any Claim was, is, or could have been asserted for such liability, and upon such discharge and release, no such liabilities shall be obligations, liabilities, claims, liens or encumbrances against the Debtor, and the Assets, whether under the doctrine of successor liability or otherwise.

8.2 <u>Full Satisfaction</u>. Furthermore, but in no way limiting the generality of the foregoing, except as otherwise specifically provided by this Plan, the distributions and rights that are provided in this Plan will be in complete satisfaction, discharge and release, effective as of the Effective Date, of (i) all Claims and Causes of Action against, liabilities of, liens on, charges, encumbrances, security interests, obligations of and interests in the Debtor, the Assets, or the direct or indirect Assets and properties of the Debtor, whether known or unknown, and (ii) all Causes of Action, whether known or unknown, either directly or derivatively through the Debtors, or the successors and assigns of the Debtor based on the same subject matter as any Claim or any other interests, in each case, regardless of whether a Proof of Claim was filed, whether or not Allowed, and whether or not the holder of the Claim has voted on this Plan, or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any Claim, in each case regardless of whether a proof of Claim was filed, whether or not Allowed and whether or not the holder of the Claim has voted on this Plan.

8.3 <u>Injunction Through Effective Date</u>. Except as expressly provided for in the Plan, all injunctions, liens or stays entered in the Chapter 11 Case and existing immediately before the Effective Date will remain in full force and effect until the Effective Date.

      8.4    Exculpation. The Debtor, the Committee and their respective present and former officers, directors, members, representatives, board members, employees, advisors, attorneys and agents acting in such capacity shall have no liability whatsoever to any holder or purported holder of an Administrative Expense Claim or Claim for any act or omission, specifically in connection with, or arising out of, this Plan, the Disclosure Statement, the negotiation of the Plan, the pursuit of approval of this Disclosure Statement or the solicitation of votes for confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or this Disclosure Statement or in furtherance thereof, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This Exculpation clause shall not be effective concerning the conduct of the Chapter 11 Case generally.

      Nothing in this section shall (i) be construed to exculpate any entity from fraud, gross negligence, willful misconduct, malpractice, criminal conduct, misuse of confidential information that causes damages, or ultra vires acts or (ii) limit the liability of the professionals of the Debtor and the Committee to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8, Rule 1.8(h)(1) (2009).

      8.5    Permanent Injunction.

      (a)    Except as expressly provided for in the Plan, all Entities are precluded and permanently enjoined from asserting against: (i) the Debtor and/or (ii) the officers and directors thereof, and/or (iii) the respective Assets and property of any of the foregoing, any Claim, which is discharged pursuant to § 8.1 or § 8.6, or satisfied pursuant to § 8.2, of the Plan.

      (b)    Scope of Release and Injunction Hereunder. The injunction provisions set forth in § 8.3 of the Plan and the release provisions set forth in §§ 8.1 of the Plan, only release and enjoin prosecution of (a) any Claims discharged under § 8.1 of the Plan, (b) Claims satisfied under § 8.2 of the Plan and (c) Claims and causes of action which are released, cancelled or compromised by the Debtor pursuant to § 6.2 of the Plan, as set forth therein.

      8.6    Binding Effect. On the Effective Date, according to § 1141 of the Bankruptcy Code, the provisions of this Plan will bind the Debtor, the Committee, any Entity acquiring Assets under this Plan, and any holder of a Claim, whether or not the Claim is Impaired under this Plan and whether or not the holder of the Claim has accepted this Plan.

## ARTICLE IX

## CAUSES OF ACTION

      9.1    In accordance with section 2.1(i) of the Asset Purchase Agreement, Integrian acquired all Causes of Action owned by the Debtor as against third parties. Consequently, the Debtor will not pursue any such claims or Causes of Action in this Chapter 11 Case.

# ARTICLE X

## MODIFICATION OF THIS PLAN

10.1 <u>Modification</u>. The Debtor reserves its right, according to the Bankruptcy Code, to amend or modify the Plan before its substantial consummation. After the Confirmation Date, the Debtor may, upon order of the Bankruptcy Court, and according to § 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intentions of the Plan. A Claimant that has accepted or rejected the Plan will be deemed to have either accepted or rejected, as the case may be, the Plan as modified or amended, even if the modifications or amendments are made after the solicitation of votes of acceptance or rejection of the Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court for such change to be made.

10.2 <u>Prior Votes on Modification</u>. A Claimant that has accepted or rejected this Plan will be deemed to have either accepted or rejected, as the case may be, this Plan as modified or amended, even if the modifications or amendments are made after the solicitation of votes of acceptance or rejection of this Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court for such change to be made.

# ARTICLE XI

## GENERAL PROVISIONS

11.1 <u>Notices.</u> Except as otherwise specified, all notices and requests will be given by any written means, including but not limited to, telex, telecopy, telegram, facsimile, first class mail, express mail or similar overnight delivery service and hand delivered letters, and any such notice or request will be deemed to have been given when received. Notices will be delivered as follows:

<u>To the Debtor</u>:

    Stephen A. Donato, Esq.
    Camille W. Hill, Esq.
    Bond, Schoeneck & King, PLLC
    One Lincoln Center
    Syracuse, New York  13202
    Phone:(315) 218-8000
    Fax:  (315) 218-8100

2240308.3

<u>To the Committee:</u>

>Robert M. Hirsh, Esq.
>Arent Fox LLP
>1675 Broadway
>New York, New York 10019
>Phone: (212) 484-3900
>Fax: (212) 484-3990

<u>To the Office of the U.S. Trustee:</u>

>Office of the United States Trustee
>Attn: Guy A. Van Baalen, Esq.
>105 U.S. Courthouse, 10 Broad Street
>Utica, New York 13501
>Phone: (315) 793-8191
>Fax: (315) 793-8133

      11.2    <u>Confirmation by Non-Acceptance Method.</u> The Debtor hereby requests confirmation of this Plan pursuant to Bankruptcy Code § 1129(b) with respect to any Impaired Class that does not vote to accept this Plan.

      11.3    <u>Payment of Statutory Fees.</u> All fees payable pursuant to 28 U.S.C. § 1930 of the United States Code will be paid until the Court enters a Final Decree closing the Chapter 11 Case.

      11.4    <u>Headings.</u> The headings used in this Plan are inserted for convenience only and constitute neither part of this Plan nor in any manner affect the provisions or interpretations of this Plan.

      11.5    <u>Enforceability.</u> Should any provision of this Plan be determined to be unenforceable for any reason, such determination will in no way limit or affect the enforceability or operative effect of any other provision of this Plan.

      11.6    <u>Exemption from Transfer Taxes.</u> Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes, documents, agreements, or instruments under this Plan, in furtherance of, or in connection with this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

      11.7    <u>Closing of Chapter 11 Case.</u> The Chapter 11 Case shall be closed on the earliest date possible after the Plan is substantially consummated and upon the Court's approval of the final report filed by the Debtor.

## ARTICLE XII

## RETENTION OF JURISDICTION

   12.1 The Bankruptcy Court will retain jurisdiction of all matters arising out of or related to the Chapter 11 Case and this Plan as long as necessary for the purposes of §§ 105(a), 1127, 1142(a) and 1144 of the Bankruptcy Code and for, *inter alia*, the following non-inclusive purposes:

   (a) to decide any objections to the allowance, disallowance or subordination of Claims or a controversy as to the classification of Claims;

   (b) to decide and fix (i) all Administrative Expense Claims, (ii) Priority Claims, (iii) General Unsecured Claims, (iv) Claims arising from the rejection of any executory contracts or unexpired leases, and (v) any other fee and expense authorized to be paid or reimbursed under the Bankruptcy Code;

   (c) to liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any Disputed, contingent or unliquidated Claims;

   (d) to adjudicate any matters as may be provided for in the Confirmation Order;

   (e) to effectuate Distributions under and enforce the provisions of this Plan;

   (f) to hear and determine any pending applications, adversary proceedings or contested matter including all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of this Plan, and matters concerning state, local and federal taxes according to §§ 346, 505 and 1146 of the Bankruptcy Code;

   (g) to amend or to correct any defect, cure any omission or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

   (h) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

   (i) to consider any modification of this Plan pursuant to § 1127 of the Bankruptcy Code or modification of the Plan after substantial consummation, as such term is defined in § 1101(2) of the Bankruptcy Code;

   (j) to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code to the maximum extent of its jurisdiction; and

   (k) to enter a final decree closing the Chapter 11 Case.

2240308.3

Dated: December 23, 2013
      Syracuse, New York

BOND, SCHOENECK & KING, PLLC
Attorneys for the Debtor

By: _____
Stephen A. Donato, Esq., of counsel
(Bar Roll No. 101522)
Camille W. Hill, Esq., of counsel
(Bar Roll No. 501876)
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
sdonato@bsk.com
chill@bsk.com


Dated: December 23, 2013
      Endicott, New York

ENDICOTT INTERCONNECT
TECHNOLOGIES, INC.

By: _____
David Van Rossum
Chief Restructuring Officer

2240308.3

Dated: December 23, 2013
      Syracuse, New York

BOND, SCHOENECK & KING, PLLC
Attorneys for the Debtor

By: _____
Stephen A. Donato, Esq., of counsel
(Bar Roll No. 101522)
Camille W. Hill, Esq., of counsel
(Bar Roll No. 501876)
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
sdonato@bsk.com
chill@bsk.com

Dated: December 23, 2013
      Endicott, New York

ENDICOTT INTERCONNECT
TECHNOLOGIES, INC.

By: _____
David Van Rossum
Chief Restructuring Officer

2240308.3